(19 P.3d 800)
No. 84,538

STATE OF KANSAS, *Appellee,* v. EMELINE HAZLEY, *Appellant.*

Opinion filed March 2, 2001.

*Jennifer C. Roth,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Charles S. Gray,* assistant county attorney, *Robert Forer,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GERNON, P.J., KNUDSON and BEIER, JJ.

BEIER, J.: Defendant-appellant Emeline Hazley brings this direct appeal after her jury convictions for possession of methamphetamine and marijuana. She argues five issues: (1) The prosecutor improperly questioned a State witness regarding post-*Miranda* silence; (2) the prosecutor made improper comments during closing argument; (3) the trial court erred by failing to give a unanimity instruction; (4) the trial court erred in failing to give an instruction on nonexclusive possession of premises and the definition of "possession" as used in the charges; and (5) the evidence at trial was insufficient for conviction. We reverse and remand.

Hazley's convictions were based on evidence seized from her house pursuant to a search warrant. Warren P. Welch, II also was living in the house. At the time the warrant was executed, Hazley, Welch, and four other persons were present. Officers found cigarette papers in a bowl, rolling papers, and methamphetamine in containers in two locations in the living room; several syringes, cigarette filters, a corner from a plastic bag, marijuana, methamphetamine in a man's shirt, and methamphetamine residue on a mirror in a southeast room; methamphetamine on a hot water heater in a small room off the southeast room; marijuana in a glass bowl, three straws, metal tubing, and hemostats in the kitchen; a spoon with methamphetamine residue in the bathroom; and methamphetamine in the bedroom.

Hazley was charged with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. Her defense was that the seized items did not belong to her but to one of the individuals who did not live at the house.

During the State's case, the prosecutor posed the following series of questions to one of the officers who participated in the execution of the search warrant:

"Q. Now, after the individuals are all restrained, what did you do then?
"A. After all the individuals were restrained?
"Q. Yes.
"A. [The defendant] was given a copy of the search warrant, and they were *mirandized*, which is the *Miranda* rights and waiver to see if—to make them aware of their rights, of what's going on, that they don't have to talk. They have the right to an attorney. They have the right to representation. If they can't afford it, to

have it given to them. And at the end of it, we asked if they wanted to talk to us. *None of them wanted to talk to us.*

. . . .

"Q. Was [the defendant] removed from the house at that time or shortly thereafter?

"A. Shortly thereafter.

"Q. *Now, did she indicate to you prior to that that she didn't want to answer any questions?*

"A. She indicated that she didn't want to talk so we didn't—we didn't discuss anything.

"Q. *Didn't want to talk to you at all?*

"A. That's correct.

. . . .

"Q. *Did [the defendant] . . . tell you she was a diabetic and took shots?*

"A. No, she didn't. We didn't, *once she refused any questioning*, we don't question her at all.

"Q. *Did anybody in the house tell you they were diabetic and used those syringes for shots?*

"A. No." (Emphasis added.)

The defense did not object at the time of trial to the admission of any of this testimony.

Welch was the sole witness for the defense. He testified that the drugs and paraphernalia belonged to one of the other individuals who was present at the house when the warrant was issued. Welch testified this individual was in the house for a couple of hours before the police got there, first sitting in the front room. By the time of the search, this individual had made his way to the kitchen. The State did not introduce any direct evidence that the drugs or paraphernalia belonged to Hazley; rather, it called upon the jury to draw an inference that she possessed the items from the circumstantial evidence that they were found in so many different parts of her home.

During closing argument, the prosecutor referred to Welch's testimony several times, saying, among other things, that he had no doubt Welch knew of facts contrary to his testimony. He also remarked that people generally lie when it is convenient and called Welch "Sir Galahad," sarcastically characterizing him as riding to the rescue of the woman he loved. The prosecutor also argued that

Welch's story was suspect because he waited to tell it at trial rather than at the time of the search:

> "Now, we have Mr. Welch come in. He hasn't moved in yet on May 8, but he spent a lot of time there, and he comes in, and he tells you that Mr. Purcell brought all of these drugs in there. Mr. Purcell is the no good low life that brought everything in. Mr. Welch told you from the witness stand, 'I've never said this before, but it was that nasty old Mr. Purcell. I've never said this before.'
>
> "This happened on May 8. And I mis-figured these days. There actually should have been 22 days in May he didn't say anything, or 23, since it's a 31-day month. I figure it's 136 days before he has come in and told you that it was Mr. Purcell that brought it in. Actually, that's wrong. There should be an additional 23 days—should be about 159 days he kept his secrets, then he comes in here to defend the woman he loves."

Finally, the prosecutor also inaccurately accused the defense attorney of arguing that the testifying police officer had lied. None of these comments by the prosecutor during closing argument drew a defense objection.

The trial court did not instruct the jury on the necessity of unanimity, on the evidentiary weight of nonexclusive possession of premises, or on the definition of "possession" as used in the charges. The defense had not sought a unanimity instruction, but had requested both the nonexclusive possession and the possession instructions.

Hazley was convicted on the two drug possession charges and acquitted on the paraphernalia charge.

### Questioning Regarding Post-Miranda Silence

We agree with the defendant that the controlling authority for analysis of comments on post-*Miranda* silence is *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). In *Doyle,* the United States Supreme Court ruled that a defendant's post-*Miranda* silence could not be used to impeach the defendant at trial without violating the due process clause. In essence, the Court found that the *Miranda* warnings imply that an arrestee's invocation of his or her right to be silent will carry no penalty; "it would be fundamentally unfair . . . to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 618.

However, a question or comment challenged under *Doyle* requires a timely and specific objection to preserve the issue for appeal. *State v. Scott*, 28 Kan. App. 2d 418, 426, 17 P.3d 966 (2001) (citing *State v. Haddock*, 257 Kan. 964, 973, 897 P.2d 152 [1995]). Because Hazley's trial counsel did not object to the officer's testimony about post-*Miranda* silence, the issue is not properly before us for review.

### Prosecutorial Comments During Closing Argument

According to the Kansas Supreme Court's recent decision in *State v. Pabst*, 268 Kan. 501, 504, 996 P.2d 321 (2000), the absence of a contemporaneous objection is not necessarily fatal to a claim of prosecutorial misconduct during closing argument. If the claimed error has been determined to implicate a defendant's right to a fair trial, our standard of review is the same regardless of whether an objection was made.

Further, the court stated:

"The analysis of the effect of a prosecutor's alleged improper remarks in closing argument is a two-step process. First, we decide whether the remarks were outside the considerable latitude the prosecutor is allowed in discussing the evidence. . . . Second, we must decide whether the remarks constitute plain error; that is, whether they are so gross and flagrant as to prejudice the jury against the accused and deny a fair trial, requiring reversal." 268 Kan. at 505.

The questioned comments of the prosecutor in this case fall into three categories of potential impropriety: comments that the sole defense witness was aware of facts contrary to his testimony and that people lie when convenient, *i.e.*, an expression of personal opinion on the witness' credibility; argument focusing on the post-*Miranda* silence of the same witness; and a misstatement of defense counsel's argument.

In *Pabst*, the Supreme Court found reversible error when, during closing argument, a prosecutor had made 11 references to the defendant lying, and the trial judge had compounded the problem by overruling one of the related objections. 268 Kan. at 505-11. As Justice Six observed for the unanimous court, both the Kansas Rules of Professional Conduct (KRPC) and the American Bar Association Standards of Criminal Justice (3d ed. 1993) clearly state

that it is improper for a lawyer to comment on a witness' credibility, and it is the responsibility of both the prosecutor and the trial judge to ensure that closing argument "is kept within the proper bounds." 268 Kan. at 506-07. See KRPC 3.4 (2000 Kan. Ct. R. Annot. 389); ABA Standard 3-5.8.

The question of prejudice was discussed in *Pabst*, 268 Kan. at 508, where Justice Six quoted this court's decision in *State v. Lockhart*, 24 Kan. App. 2d 488, 492, 947 P.2d 461 (1997), with approval:

" ' "When determining whether prosecutorial misconduct was prejudicial, factors that should be considered include: (1) Is the misconduct so gross and flagrant as to deny the accused a fair trial? (2) Do the remarks show ill will on the prosecutor's part? (3) Is the evidence against the defendant of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors? [Citation omitted.]" ' "

Both before and since *Pabst*, this court has recognized the potential prejudice of a prosecutor's negative comments on the defendant's or defense counsel's credibility. See *State v. Magdaleno*, 28 Kan. App. 2d 429, 17 P.3d 974 (2001) (comments labeling defense counsel liar); *State v. Smith*, 28 Kan. App. 2d 56, 11 P.3d 520 (2000) (repeated references to defendant as liar); *State v. Pham*, 27 Kan. App. 2d 996, 1005, 10 P.3d 780 (2000), (statements to jury that defense counsel not interested in truth); *Lockhart*, 24 Kan. App 2d at 491-93 (references to both defendant and defense counsel as liars); *State v. Hutcherson*, 25 Kan. App. 2d 501, 506-07, 968 P.2d 1109 (1998) (reference to defendant as his own sole witness as "a liar, a criminal, and a drug dealer").

The rationale of these cases was stated forcefully in *Pabst*:

"A prosecutor is a servant of the law and a representative of the people of Kansas. We are unable to locate an excuse for a prosecutor's failure to understand the remarkable responsibility he or she undertakes when rising in a courtroom to announce an appearance for the State of Kansas. . . .

. . . .

"The State's characterization of the prosecutor's statement that a defendant is lying, as a comment on the evidence, misses the mark. The point of not allowing a prosecutor to comment on the credibility of a witness *is that expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony*, not *commentary on the evidence of the case*. . . . Here [the prosecutor] introduced into the case his personal opinion of [the defendant's] credibility. He

ignored his special obligation as a prosecutor to avoid improper personal insinuations. Because he represented the State of Kansas the jury might have been misled into thinking his personal opinions were validated by the weight of the State of Kansas. Such prosecutorial vouching places the prestige of the State behind the prosecutor's personal assurances." 268 Kan. at 510-11.

This rationale is no less persuasive when the maligned witness is someone other than the defendant or his or her counsel, as Welch was here. When we review the three considerations recited above, we conclude that the prosecutor's statements regarding Welch were so gross and flagrant as to deny Hazley a fair trial and showed ill will on the prosecutor's part. Further, given the State's purely circumstantial case against Hazley, and Welch's direct testimony about the possession of the drugs and paraphernalia, the evidence against Hazley was not of such a direct and overwhelming nature that we can say the misconduct had little weight.

Our conclusions are bolstered by the prosecutor's additional improper statements during argument. As discussed in relation to the first issue, under *Doyle*, it is a violation of the defendant's due process rights for the State to introduce evidence of the defendant's silence after *Miranda* warnings were given. 426 U.S. at 618. Again, we see no meaningful analytical distinction between prosecutorial comment on such silence when the defendant has chosen to invoke his or her Fifth Amendment privilege against self-incrimination and such silence when the defendant's sole witness has relied on the same privilege. In both cases, the State has struck the implicit bargain outlined in *Doyle*: Silence that follows *Miranda* warnings will not be used to cast doubt on a later explanation.

We are also troubled by the prosecutor's misstatement of defense counsel's argument, *i.e.*, saying that defense counsel argued that the police officer lied. It was improper because it was inaccurate, but it was also improper for the same reason that the prosecutor's injection of his personal opinion about witness credibility was improper. As the prosecutor wears the mantle of the State, so does a police officer. Defense counsel was placed in false opposition to a person most jurors are bound to see as a figure of authority and veracity. Prosecutors do not need to resort to "don't forget who wears the white hats" statements to be effective.

In sum, we view the prosecutorial misconduct during closing argument as reversible error. Even if it did not qualify as reversible error on its own, however, this case would require reversal under the doctrine of cumulative error because of the prosecutorial misconduct and our holdings set forth below regarding the instructions on nonexclusive possession of premises and the definition of "possession." See *State v. Allison*, 259 Kan. 25, 37-38, 910 P.2d 817 (1996).

## Unanimity Instruction

Hazley next argues the trial court erred by failing to instruct the jury on the necessity for unanimity on a given criminal act for each count. This issue is not moot because it may arise again on retrial. The argument arises out of the prosecution's failure to specify which illegal items it was relying on for conviction on each charge.

Hazley urges us to hold that *State v. Kinmon*, 26 Kan. App. 2d 677, 995 P.2d 876 (1999), controls this issue. In that case, weight of the State's evidence was that the defendant possessed cocaine in two places: in his pocket and under a couch. The first would constitute actual possession and the second constructive possession. Because either factually and legally distinct act could have supported the crime charged, we ruled that the trial judge committed error by failing to instruct the members of the jury that they must agree unanimously on which act was proved by the State. 26 Kan. App. 2d 678-79.

We do not find *Kinmon* controlling. In this case, the State pursued convictions only on a constructive possession theory for drugs found simultaneously throughout the house in which Hazley lived. On the methamphetamine count, for example, Hazley was accused of constructively possessing *all* of the methamphetamine in her home. The same was true of the marijuana count. There were no truly multiple acts on which the prosecution relied and thus there was no need for a unanimity instruction.

## Instruction on Nonexclusive Possession of Premises

Hazley also argues the trial court erred when it denied her requested instruction on nonexclusive possession. Our standard of

review is "independent." *State v. Sims*, 265 Kan. 166, 168, 960 P.2d 1271 (1998). We must view the evidence in a light most favorable to Hazley, ultimately determining whether the trial court instructed the jury " 'on the law applicable to the defendant's theories for which there is supporting evidence.' " 265 Kan. at 168 (quoting *State v. Scott*, 250 Kan. 350, Syl. ¶ 4, 827 P.2d 733 [1992]).

Hazley is correct that: " ' "When a defendant is in nonexclusive possession of premises on which drugs are found, the better view is that it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs." ' " *State v. Galloway*, 16 Kan. App. 2d 54, 63, 817 P.2d 1124 (1991) (quoting *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 [1989]).

The evidence in this case, when viewed in the light most favorable to Hazley, supported the giving of an instruction on nonexclusive possession. The jury needed to understand how to weigh the evidence of Hazley's residence in the home. The trial court's failure to include the instruction was error.

### Instruction on Definition of "Possession"

Hazley concedes she failed to request a definition of "possession." We therefore analyze this issue under the "clearly erroneous" standard of review. K.S.A. 2000 Supp. 22-3414(3). "An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict." *State v. Deavers*, 252 Kan. 149, 164-65, 843 P.2d 695 (1992), *cert. denied* 508 U.S. 978 (1993).

This was a constructive possession case because none of the illegal items was found on Hazley's person. "Possession" under the law involves "[h]aving control over a . . . thing with knowledge of and the intent to have such control." PIK Crim. 3d 53.00. The omission of that definition in this case of constructive possession was clearly erroneous, particularly in light of the State's theory and argument. In essence, the State asked the jury to conclude that Hazley was guilty simply because she lived in the place where the

drugs and paraphernalia were found. It focused on the strong circumstantial evidence of "knowledge" to the virtual exclusion of the "control" aspect of the legal definition. The absence of the instruction further promoted that imbalance.

## Sufficiency of the Evidence

We have thoroughly reviewed the record in this case and conclude that the evidence, viewed in the light most favorable to the prosecution, could have supported a rational factfinder's conclusion that Hazley was guilty beyond a reasonable doubt. See *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Smith*, 268 Kan. 222, 236, 993 P.2d 1213 (1999).

However, in view of the prosecutorial misconduct and the failure of the trial court to give instructions regarding the possession issues raised, both of which constitute error, this matter must be reversed and remanded for a new trial.

Reversed and remanded.