No. 90,498

STATE OF KANSAS, *Appellee*, v. DAVID E. UNRUH, *Appellant*.

(133 P.3d 35)

Opinion filed April 28, 2006.

*Patrick H. Dunn,* assistant appellate defender, argued the cause and was on the briefs for appellant.

*Ty Kaufman,* county attorney, argued the cause, and *Phill Kline,* attorney general, was with him on the brief for appellee.

The opinion was delivered by

LUCKERT, J.: David E. Unruh petitions for review of the Court of Appeals' decision affirming various drug convictions and sentences and ordering remand to the district court with directions that the district court reinstate Unruh's conviction and sentence for possession of drug paraphernalia with intent to manufacture. Unruh raises a variety of issues which are legally identical to issues in *State v. Schoonover,* (No. 90,360, this day decided), but are factually unique. Additionally, he raises a unique issue regarding the Court of Appeals' decision to remand his case with directions.

## FACTS

On October 2, 2001, Detective Chad Curl noticed a van driving slower than normal traffic in McPherson, Kansas. Detective Curl ran the van's tags, discovered the van was stolen, and made a felony traffic stop. The van's occupants, David Unruh, Daniel Unruh, and Tonya Saar, were arrested, and the van was impounded. David Unruh, the defendant, had been driving the van. Daniel Unruh is David's older brother.

During an inventory search of the van, Detective Mike Terry found a black leather coat lying across the back of the driver's seat which contained a loaded handgun, a spare magazine, a brass marijuana pipe, a pill bottle bearing David Unruh's name, and a baggie of methamphetamine. Also in the passenger compartment of the van, Detective Terry found a billfold which contained three identifications for different females. The billfold also held some wax paper containing methamphetamine, a syringe, and some marijuana. In between the van's seats, Detective Terry found a marijuana cigarette and a film canister containing marijuana inside a money bag and a bag of syringes.

In the back of the van, which was separated from the passenger compartment by a piece of cloth between the seats, Detective Terry seized over 100 items of evidence associated with the manufacture of methamphetamine. These items included three 100-gallon cylinders and three smaller cylinders of anhydrous ammonia. Another detective also found three baggies of marijuana.

During Unruh's trial, Detective Terry described a recipe for making methamphetamine by using chemicals to remove the bindings from pseudoephedrine tablets to obtain pure ephedrine, then mixing the ephedrine with lithium taken from lithium batteries and anhydrous ammonia, and finally using rock salt and muriatic acid to obtain the finished product of methamphetamine. Detective Terry also indicated there was another recipe for producing methamphetamine using red phosphorus. According to Detective Terry, he found inside the van every item needed for producing methamphetamine using either recipe. He also found a large quantity (41 grams) of finished methamphetamine. Detective Terry testified that the equipment in the back of the van constituted an active methamphetamine lab which had already manufactured some methamphetamine and had the materials to manufacture more.

A Kansas Bureau of Investigation (KBI) chemist confirmed the presence of marijuana, methamphetamine, and pseudoephedrine pills in the van. He also confirmed that the items seized from the van contained chemicals used in manufacturing methamphetamine, for example, iodine, phosphorus, ethanol, sulfuric acid, and sodium chloride. The chemist identified approximately 1,000 grams of slag material, the leftover material after pseudoephedrine has been removed from a tablet. According to the chemist, all of the items he examined were items which would have come from a working methamphetamine lab.

Unruh testified he met his brother Daniel to try and help him fix the van and later agreed to drive Daniel and Tonya back to Hutchinson. Unruh testified he had borrowed the leather coat from Daniel, and Unruh admitted that the gun, marijuana pipe, and pill bottle belonged to him. However, he denied any knowledge of the baggie of methamphetamine found in the coat or of any of the other contents of the van.

A jury convicted Unruh on all seven counts: manufacture of methamphetamine, possession of anhydrous ammonia in an unapproved container, possession of drug paraphernalia with intent to manufacture, possession of ephedrine as a precursor drug, possession of methamphetamine, possession of methamphetamine without the appropriate drug tax stamps, and possession of marijuana.

At sentencing, Unruh asked that the trial court follow *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002), and sentence on possession of ephedrine as a drug severity level 4 felony. Unruh also argued, based on *Frazier*, that his convictions of possession of drug paraphernalia and possession of ephedrine were multiplicitous. The trial court refused to follow *Frazier* because a petition for review was still pending at that time. The court sentenced Unruh on manufacture of methamphetamine as a drug severity level 1 felony and on possession of ephedrine as a drug severity level 1 felony. The court also sentenced Unruh on his other convictions according to law, all sentences to run concurrently. Unruh timely appealed.

### REMAND FOR RESENTENCING

While the appeal was pending, Unruh filed a motion to remand for resentencing on his manufacturing conviction in accordance with *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004). The Court of Appeals granted the motion and remanded for resentencing "in light of *McAdam* and *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002)."

According to the parties, on remand the trial court resentenced Unruh on manufacture of methamphetamine as a drug severity level 3 felony and on possession of ephedrine as a drug severity level 4 felony. The trial court reimposed the same sentences on the remaining convictions, except that the court refused to impose a sentence on the possession of drug paraphernalia conviction, ruling it was multiplicitous with the conviction of possession of ephedrine.

### THE COURT OF APPEALS' DECISION

When the case returned to the Court of Appeals, the Court of

Appeals panel ruled that the trial court's order vacating Unruh's conviction for possession of drug paraphernalia exceeded the Court of Appeals' mandate; therefore, the panel remanded with directions that the trial court reinstate the conviction and sentence for possession of drug paraphernalia. *State v. Unruh*, No. 90,498, unpublished opinion filed December 17, 2004, slip op. at 2, 5-6. With regard to Unruh's sentence for possession of ephedrine, the panel ruled that Unruh's original sentence to a drug severity level 1 felony was correct; however, the panel did not specify that the trial court should reimpose this sentence on remand. *Unruh*, slip op. at 14. In all other respects, the panel affirmed Unruh's convictions and sentences. *Unruh*, slip op. at 14. This court granted Unruh's petition for review.

## ANALYSIS

### *Resentencing on Remand*

Unruh argues that the Court of Appeals erred in finding that the trial court exceeded the Court of Appeals' mandate on remand when it vacated his conviction for possession of drug paraphernalia as multiplicitous.

Unruh points out that the State never filed a notice of appeal or cross-appeal from the resentencing order; thus, the Court of Appeals had no jurisdiction to consider the trial court's actions. The State has not responded to this argument.

The filing of a timely notice of appeal is jurisdictional. *State v. McDaniel*, 249 Kan. 341, 344, 819 P.2d 1165 (1991). Just as a defendant must file a notice of appeal, "the State must also lay a foundation for its own appeal by filing a notice of appeal which gives the appellate court jurisdiction to hear the appeal." *State v. G.W.A.*, 258 Kan. 703, 706, 906 P.2d 657 (1995); see also *State v. Finical*, 254 Kan. 529, 532, 867 P.2d 322 (1994) (when the State fails to appeal an appealable order, it becomes the law of the case).

In its remand order, the Court of Appeals specifically informed the parties of the need to file a notice of appeal from the resentencing in order to preserve any new issues for appellate review:

"If the defendant wishes to appeal the new sentence, trial and/or appellate counsel are responsible for filing a supplemental notice of appeal with the district

court. The notice of appeal must be filed within 10 days of resentencing. If no notice of appeal is timely filed, the appeal will proceed on any of the original issues which remain without further notice."

While the language of the order was directed toward the defendant, it also put the State on notice that any issues arising from the resentencing would be addressed only if a notice of appeal was filed.

Because the State failed to file a notice of appeal from the resentencing, the Court of Appeals lacked jurisdiction to consider any issues arising therefrom. Accordingly, that portion of the Court of Appeals' decision remanding to the district court with directions to reinstate Unruh's conviction and sentence for possession of drug paraphernalia is reversed.

In responding to Unruh's petition for review, the State attempts to raise another sentencing issue, arguing that this case should be remanded to the Court of Appeals "for clarification and further resentencing" of the defendant on his possession of ephedrine conviction as a drug severity level 1 felony. In essence, the State is arguing that the Court of Appeals erred in failing to reverse the trial court's imposition of a drug severity level 4 felony sentence on remand.

Several reasons require us to reject the State's position. First, the State failed to preserve the issue of error in the trial court's ruling by filing a notice of appeal from the resentencing. See *G.W.A.*, 258 Kan. at 706. Second, the State failed to preserve the issue of error in the Court of Appeals' decision by filing a cross-petition for review. See Supreme Court Rule 8.03(b), (g)(1) (2005 Kan. Ct. R. Annot. 61); *State v. Blockman*, 255 Kan. 953, 963, 881 P.2d 561 (1994). Finally, the substance of the State's argument is without merit. The State relies on *State v. Campbell*, 278 Kan. 410, 101 P.3d 1179 (2004), to support its argument that Unruh's original severity level 1 sentence for possession of ephedrine was correct. That opinion was withdrawn and superseded by *State v. Campbell*, 279 Kan. 1, 106 P.3d 1129 (2005), which held that the crimes of possession of ephedrine under K.S.A. 65-7006, a drug severity level 1 felony, and possession of drug paraphernalia under K.S.A. 65-4152(a)(3), a drug severity level 4 felony, were identical offenses,

thus a defendant must be sentenced to the lesser penalty. The trial court correctly sentenced Unruh in this case on his possession of ephedrine conviction as a drug severity level 4 felony.

*Multiple Acts*

K.S.A. 22-3403(1) and K.S.A. 22-3421 provide a criminal defendant the right to a unanimous jury verdict. Unruh argues he was denied this right because there were several factually distinct acts upon which the jury could have relied to convict him of the crimes charged. Unruh contends the State did not elect which act it was relying upon for conviction, nor did the trial court give a unanimity instruction; therefore, his convictions must be reversed.

The Court of Appeals rejected Unruh's argument without any substantial analysis. *Unruh*, slip op. at 9-10.

In considering similar multiple acts issues in *Schoonover*, we stated:

"Whether a case presents a multiple acts issue is a question of law over which this court has unlimited review. *State v. Kesselring*, 279 Kan. [671, 682, 112 P.3d 175 (2005)]. We have applied a two-part 'harmless error test' enunciated in *State v. Hill*, 271 Kan. 929, 939, 26 P.3d 1267 (2001), when analyzing unanimity issues. The first prong of the *Hill* harmless error test requires determination of whether there was jury confusion. As part of this analysis, it must be determined whether the evidence showed legally or factually separate incidents. In *Kesselring*, we clarified that the question of whether there were factually separate incidents should be a threshold question, not part of a harmless error analysis. . . . [W]e must determine if there are multiple acts involved before considering whether the defendant's statutory right to a unanimous verdict has been violated. If the incidents are not factually separate, there are not multiple acts.

"As we explained in *Kesselring*, ' "[i]ncidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by a 'fresh impulse.' " ' 279 Kan. at 683 (quoting *Hill*, 271 Kan. at 939). In addition, the other factors we have identified as factors for determining if there is unitary conduct can be applied as well. Thus, the considerations would include: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a casual relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." *Schoonover*, (No. 90,360, this day decided, slip op. at 62).

<u>Manufacture of Methamphetamine</u>. Unruh contends the jury could have convicted him of manufacture of methamphetamine

based upon either a successful manufacture as evidenced by the presence of the finished product or his ongoing ability to manufacture additional methamphetamine as evidenced by the paraphernalia found in the van. He cites *State v. Martens*, 274 Kan. 459, 54 P.3d 960 (2002), in support. *Martens* held that the statutory definitions of "manufacture" and "controlled substance" do not mandate completion of a final product for a defendant to be convicted of manufacturing a controlled substance. 274 Kan. at 466. Thus, "to prove the crime of manufacture of methamphetamine, the State must show that the defendant (1) intentionally (2) completed the manufacture of methamphetamine or (3) could have successfully manufactured methamphetamine." 274 Kan. at 466.

What *Martens* describes is the alternative means by which a defendant may commit the crime of manufacturing methamphetamine. The fact that there was evidence to support a conviction under either alternative means does not convert this into a multiple acts case. See *State v. Timley*, 255 Kan. 286, Syl. ¶ 1, 875 P.2d 242 (1994). Moreover, there was no evidence of acts occurring at different times and places which were motivated by separate criminal impulses. Unruh's manufacturing conduct did not consist of multiple acts; rather it was a continuing course of conduct which could not be separated into factually distinct acts.

Possession of Methamphetamine. Unruh contends there were four items containing methamphetamine upon which the jury could have relied to convict him of possession of methamphetamine, including the methamphetamine found: (1) in his coat pocket; (2) in the billfold; (3) in a small baggie in an ammunition box in the back of the van; or (4) in a large baggie in that same ammunition box (the 41 grams). Unruh contends his case involved multiple acts because the jury could have believed his testimony that he did not know about the methamphetamine in the back of the van but disbelieved his testimony that he did not know about the methamphetamine in his coat pocket. However, Unruh denied being aware of any of the methamphetamine, stating that all of it belonged to his brother Daniel.

As such, this case is similar to *State v. Hazley*, 28 Kan. App. 2d 664, 19 P.3d 800 (2001). In *Hazley*, the State charged the defend-

ant with possession of methamphetamine and marijuana under the theory that she constructively possessed all the drugs found in various locations throughout her home. The defendant claimed the drugs belonged to someone else. The defendant argued that a unanimity instruction was required because the State failed to specify which items it was relying on to support each charge. The court rejected her argument, holding "[t]here were no truly multiple acts on which the prosecution relied and thus there was no need for a unanimity instruction." 28 Kan. App. 2d at 671.

*Hazley* distinguished another Court of Appeals case involving similar facts: *State v. Kinmon*, 26 Kan. App. 2d 677, 995 P.2d 876 (1999), *abrogated on other grounds by State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001). In *Kinmon*, the jury could have convicted the defendant based upon evidence of actual possession of cocaine found in his pocket or constructive possession of cocaine found under a couch. The *Kinmon* court ruled that jurors could have relied on different acts in deciding to convict the defendant, thus the failure to give a unanimity instruction required reversal of the defendant's conviction. 26 Kan. App. 2d at 678-79.

The *Hazley* court found it significant that the evidence in *Kinmon* showed legally different types of possession as to each drug found, whereas in *Hazley*, the State alleged that the defendant constructively possessed all of the drugs found. 28 Kan. App. 2d at 671.

Similarly, this case does not involve different acts of actual possession versus constructive possession. Unruh argued all of the methamphetamine belonged to his brother, and he asserted that he had no knowledge of any of it. The State alleged that the defendant constructively possessed all of the methamphetamine found in the van. At the time of arrest, all of the methamphetamine was located in the van which Unruh was driving. Thus, there was no temporal, geographic, or other separation or severance of the acts. As in *Hazley*, this case is one involving multiple items of evidence but not multiple acts. Consequently, there was no need for the State to specify which particular methamphetamine it was relying upon and no need for the trial court to give a unanimity instruction.

Possession of Ephedrine. The State also alleged that Unruh was in constructive possession of the ephedrine, and Unruh denied any knowledge or possession of the ephedrine. Again, the reasoning of *Hazley* applies. While there were multiple items of evidence, there were not multiple acts. Thus, there was no need for the State to specify which particular ephedrine it was relying upon and no need for the trial court to give a unanimity instruction.

Possession of Drug Paraphernalia With Intent to Manufacture. Unruh argues there were several factually different acts which the jury could have relied upon to convict him of possession of drug paraphernalia with intent to manufacture. Again, the fact that there were multiple items of evidence does not make this a multiple acts case. However, Unruh also argues that several of the items found were paraphernalia for drug use, not manufacturing. He was not charged or convicted of possessing drug paraphernalia for drug use.

The State points out in its brief that Detective Terry testified about the specific use of each piece of drug paraphernalia found. Terry explained that the brass marijuana pipe and insulin syringes were used for inhaling or ingesting drugs, rather than in the manufacturing process. Furthermore, Instruction No. 7, which defined drug paraphernalia, did not include any language which could be construed to have informed the jury that it could convict the defendant based on drug paraphernalia intended for use to ingest or inhale drugs. As such, multiple acts of possession of drug paraphernalia with intent to manufacture were not presented to the jury.

Additionally, Unruh raises a related issue regarding jury instructions, complaining that Instruction No. 7 improperly defined drug paraphernalia in another respect. Instruction No. 7 read as follows:

" 'Drug paraphernalia' means all equipment, products and materials of any kind which are used or intended for use in manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, *storing or containing* a controlled substance in violation of the Uniform Controlled Substances act.

" 'Drug paraphernalia' shall include, but is not limited to:

(1) Kits used or intended for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances;

(2) Scales and balances used or intended for use in weighing or measuring controlled substances;

(3) Blenders, bowls, containers, spoons and mixing devices used or intended for use in compounding controlled substances." (Emphasis added.)

Unruh accurately points out that possession with intent to use drug paraphernalia to "use, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance" is a class A nonperson misdemeanor under K.S.A. 65-4152(a)(2) and (b). Jury Instruction No. 7 improperly defined drug paraphernalia to include items used for "storing or containing" a controlled substance. According to Unruh, the jury could have convicted him of possession of drug paraphernalia with intent to manufacture, a drug severity level 4 felony under K.S.A. 65-4152(a)(3) and (c), based on his possession of drug paraphernalia which was only intended to store or contain, conduct which constitutes a misdemeanor under K.S.A. 65-4152(a)(2).

Unruh did not object to the giving of this instruction as written. When a defendant does not object to the giving of an instruction, this court will find reversible error only if the giving of the instruction was clearly erroneous. " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citation omitted.]" *State v. Drennan*, 278 Kan. 704, 712, 101 P.3d 1218 (2004).

Although the jury instruction defining drug paraphernalia improperly included "storing or containing" in its definition, the jury was properly instructed on the elements of felony possession of drug paraphernalia with intent to manufacture as follows:

"Instruction No. 6

"The Defendant is charged with the crime of unlawfully possessing with intent to use, drug paraphernalia. The Defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the Defendant knowingly possessed with intent to use, drug paraphernalia to manufacture, compound, convert, produce, process, prepare, test, analyze, pack or repack methamphetamine; and

2. That this act occurred on or about the 3rd day of October, 2001, in McPherson County, Kansas."

Given the overwhelming evidence in this case, and the fact that the jury was correctly instructed on the elements of felony possession of drug paraphernalia with intent to manufacture, there is no possibility that the jury would have returned a different verdict had the words "storing or containing" been omitted from the definition of drug paraphernalia. Their improper inclusion in the instruction could not have changed the result of the trial; therefore, the instruction was not clearly erroneous and does not justify reversal of Unruh's conviction.

We caution trial courts, however, of the need to carefully tailor PIK Crim. 3d 67.18-B, which defines drug paraphernalia, by differentiating between those terms which apply to felony possession of drug paraphernalia and those which apply to misdemeanor possession of drug paraphernalia. Under different facts in another case, such an error might require reversal.

Possession of Methamphetamine Without a Drug Tax Stamp. Finally, Unruh argues there were four items containing methamphetamine upon which the jury could have relied to convict him of possession of methamphetamine without a drug tax stamp, and several of these items were of insufficient weight to trigger the requirement of a drug tax stamp. The reasoning of *Hazley* again controls this issue. In addition, the two baggies of methamphetamine weighed more than 1 gram each, which was clearly sufficient to trigger the drug tax stamp requirement.

## Double Jeopardy

Unruh also argues that many of his drug convictions were multiplicitous and therefore violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. Specifically, he argues there were five sets of multiplicitous charges which resulted in double jeopardy violations upon his convictions for: (1) manufacture of methamphetamine and possession of methamphetamine; (2) manufacture of methamphetamine and possession of anhydrous ammonia in an unapproved container; (3) manufacture of methamphetamine and possession of ephedrine or pseudoephedrine as a precursor; (4) manufacture of methamphetamine and pos-

session of drug paraphernalia with intent to manufacture; and (5) possession of ephedrine or pseudoephedrine as a precursor, possession of anhydrous ammonia, and possession of drug paraphernalia with intent to manufacture.

The last two of these sets of charges relate to Unruh's conviction for possession of drug paraphernalia with intent to manufacture. As previously discussed, this conviction was vacated by the district court. Therefore, these issues are moot and need not be discussed. The remaining issues (as well as the issues relating to drug paraphernalia) were discussed extensively in *Schoonover*, where we held:

"In analyzing a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one? Under the first component, if the conduct is discrete, *i.e.*, committed separately and severally, the convictions do not arise from the same offense and there is no double jeopardy violation. If the charges arise from the same act or transaction, the conduct is unitary and the second component must be analyzed to see if the convictions arise from the same offense. Under the second component, it must be determined whether the convictions arise from a single statute or from multiple statutes. If the double jeopardy issue arises from convictions for multiple violations of a single statute the unit of prosecution test is applied. If the double jeopardy issue arises from multiple convictions of different statutes, in other words it is a multiple description issue, the same-elements test is applied." *Schoonover*, (No. 90,360, this day decided, Syl. ¶ 15).

Like *Schoonover*, this is a case where the double jeopardy issue arises from convictions in violation of multiple statutes. As such, the same-elements test applies to the determination of whether the statutes are defined as the same offense. *Schoonover*, (No. 90,360, this day decided, slip op. at 54).

In this case, the Court of Appeals panel, without articulating this type of framework, generally followed such an analysis. The panel determined that some of the convictions were based upon the same physical acts while others were not and that under a same-elements test the convictions were not multiplicitous. Unruh challenges the panel's reasoning that the acts were factually discrete, making the same arguments as made by the defendant in *Schoonover*. We need

not dissect the factual differences in the two cases because of our holding in *Schoonover*, applying the same-elements test, that each of the crimes of possession of methamphetamine, possession of anhydrous ammonia in an unapproved container, and possession of ephedrine or pseudoephedrine as a precursor require proof of an element not required to be proved for a conviction of manufacture of methamphetamine. Therefore, none of the convictions was multiplicitous or resulted in a violation of double jeopardy. *Schoonover*, (No. 90,360, this day decided, slip op. at 54-60). This same conclusion applies in this case.

## Lesser Included Offenses

In a related argument, Unruh contends the trial court erred in failing to instruct the jury on possession of drug paraphernalia with intent to manufacture and possession of methamphetamine as lesser included offenses of manufacture of methamphetamine. Unruh did not request such instructions.

As noted by the Court of Appeals panel, where a defendant complains of error in the failure to give lesser included offense instructions but did not request such instructions, the appellate court will not reverse unless the failure to give the instructions was clearly erroneous. See *State v. Young*, 277 Kan. 588, 600, 87 P.3d 308 (2004).

In this case, the Court of Appeals concluded that possession of drug paraphernalia with intent to manufacture and possession of methamphetamine were not lesser included offenses of manufacture of methamphetamine under K.S.A. 2005 Supp. 21-3107(2); therefore, the trial court's failure to instruct the jury on lesser included offenses of manufacturing methamphetamine was not clearly erroneous. *Unruh*, slip op. at 9. We considered the same issue in *Schoonover* and held that the offenses of possession of drug paraphernalia with intent to manufacture and possession of methamphetamine do not contain elements which are identical to some or all of the elements of the offense of manufacture of methamphetamine; therefore, they are not lesser included offenses. *Schoonover*, (No. 90,360, this day decided, slip op. at 60). The trial

court did not err in failing to instruct on these crimes as lesser included offenses.

*Sufficiency of Evidence Regarding Drug Tax Stamps*

Next, Unruh argues the evidence was insufficient to support his conviction of possession of methamphetamine without the appropriate drug tax stamp because there was no evidence of when he came into possession of the methamphetamine or how many stamps were needed. In support, he cites *State v. Edwards*, 27 Kan. App. 2d 754, 762, 9 P.3d 568 (2000), which held that "a defendant may not be found guilty of a crime for failing to affix tax stamps to a controlled substance unless the evidence shows that the defendant had sufficient possession so that he or she had an opportunity to affix those stamps."

The Court of Appeals rejected the defendant's argument, finding the reasoning of *State v. Alvarez*, 29 Kan. App. 2d 368, 372, 28 P.3d 404, *rev. denied* 272 Kan. 1419 (2001), to be more persuasive. *Unruh*, slip op. at 12. *Alvarez* relied on K.S.A. 79-5204(c), which requires that a dealer affix a drug tax stamp " 'immediately after receiving the substance,' " in holding that there is no grace period to purchase and affix a drug tax stamp. 29 Kan. App. 2d at 372.

Although, unlike *Schoonover*, this is a constructive possession case because there were three people inside the van, Unruh raises the same issue as raised in *Schoonover* of whether he had sufficient *time* to affix the stamps. After considering the argument and discussing relevant authority in *Schoonover*, we adopted the reasoning of *Alvarez* and *State v. Curry*, 29 Kan. App. 2d 392, 28 P.3d 1019, *rev. denied* 272 Kan. 1420 (2001), holding: "Under K.S.A. 79-5204(c) and (d), the drug tax is due and payable, and drug tax stamps must be affixed immediately upon receipt, acquisition, or possession of the controlled substance." *Schoonover*, (No. 90,360, this day decided, slip op. at 67). We also approved of the *Curry* panel's conclusion that "the relevant analysis was not whether the defendant had possession of the drugs for a sufficient period of time to affix drug tax stamps, but whether he had 'actual possession or possession with sufficient control over the drugs to permit the

immediate affixing of drug tax stamps.' 29 Kan. App. 2d at 399."
*Schoonover*, (No. 90,360, this day decided, slip op. at 67).

Unruh did have sufficient access to and control over the methamphetamine found in the van to permit his immediate affixing of drug tax stamps. Under these circumstances, the evidence was sufficient to support Unruh's conviction for possession of methamphetamine without the appropriate drug tax stamp being affixed.

### Jury Instruction Regarding Drug Tax Stamps

In a related argument, Unruh contends the trial court erred in failing to instruct the jury that, in order to convict the defendant of possession of methamphetamine without affixing drug tax stamps, it must find the defendant had the opportunity to affix the stamps. We rejected a similar argument in *Schoonover*, (No. 90,360, this day decided, slip op. at 68). However, unlike Schoonover who did not object to the instructions or request an instruction, Unruh requested that the trial court give such an instruction.

When reviewing challenges to jury instructions, this court considers the instructions as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts and could not have reasonably misled the jury, the instructions will be upheld even if they are in some way erroneous. *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

The Court of Appeals considered this argument in conjunction with Unruh's sufficiency argument and rejected both based on *Alvarez. Unruh*, slip op. at 11-12.

The trial court gave the elements instruction provided in PIK Crim. 3d 67.24, which, in part, required the jury to find: "That the Defendant knowingly possessed more than one (1) gram of Methamphetamine without affixing official Kansas tax stamps or other labels showing that the tax had been paid." In addition, the jury instructions defined "possession," explaining that possession did not require ownership; could be constructive, joint, or exclusive; and required "knowledge of, and intent to have" control of the items.

At the instruction conference, counsel for Unruh indicated that while there was no general objection to the instruction, the instruc-

tion, when read in conjunction with the drug tax elements instruction, was confusing. He proffered an instruction, proposing language based upon *Edwards.*

Given our holding in *Schoonover* that *Edwards* was incorrectly decided, Unruh was not entitled to an instruction based upon that decision or its rationale. Also, the elements instruction and the possession instruction, when read together, adequately instruct the jury that to find the defendant guilty the defendant must have had sufficient possession of the drug to allow the defendant an opportunity to affix the drug tax stamps. While it would have been advisable to use PIK Crim. 3d 67.13-D, in this case, where the defendant clearly had sufficient access to and control over the methamphetamine found in the van to permit his immediately affixing drug tax stamps, the jury could not have been misled by the instructions and the trial court did not err in failing to instruct the jury that the defendant must have had an opportunity to affix the drug tax stamps.

### Cumulative Error

Unruh's final argument is that the cumulative effect of multiple errors denied him a fair trial. Multiple trial errors may require reversal of a defendant's conviction if the cumulative effect of the errors substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found if the evidence against the defendant was overwhelming. *State v. Lumbrera,* 252 Kan. 54, 57, 845 P.2d 609 (1992). Because there was no error in this case, this issue has no merit.

The Court of Appeals' remand to the district court with directions to reinstate Unruh's conviction and sentence for possession of drug paraphernalia is reversed. The remainder of the Court of Appeals' decision is affirmed.

LOCKETT, J., Retired, assigned.