NOT DESIGNATED FOR PUBLICATION

No. 126,777

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOEL PETER BALES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Submitted without oral argument. Opinion filed September 12, 2025. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: This is a direct appeal from a criminal defendant's conviction and sentencing. Joel Peter Bales challenges the sufficiency of the evidence presented at his trial for possession of drug paraphernalia and possession of methamphetamine. He also contends that the district court erred by failing to give a unanimity instruction to the jury as to the possession-of-methamphetamine charge. Finding no error, we affirm.

1

FACTUAL AND PROCEDURAL HISTORY

On September 4, 2021, Pottawatomie Sheriff's Deputy Justin Young was sitting in a parking lot of a tractor supply company. Young saw a bicycle with its front light on going behind a business on the other side of the street. He thought this was unusual, because he believed at the time that the business was closed and that the house located behind the business was unoccupied. Deputy Young approached the residence to investigate for trespassing, saw an open door, and encountered Joel Bales as Bales exited the residence. Bales told Young that he had permission to be on the property and provided the name of the property owner.

Deputy Young noticed a brown substance on Bales' face and saw the backside of a hypodermic needle in Bales' left front pocket. Young suspected the needle was related to methamphetamine or heroin use and believed the substance on Bales' face was dried blood. He asked Bales if he had any medical conditions, and Bales stated he did but "he didn't want to be forward about it." Young contacted the owner, who requested that Bales be removed from the residence. Young then searched the residence to make sure nobody else was inside.

In searching the residence, Deputy Young found some items on a table inside the residence that he believed to be narcotics and seized them. The owner of the residence advised police that she wanted Bales to remove all of his items from the house. Bales was allowed to return to the house to get his things. He gathered everything that was on the table where the narcotics were found to take with him. Young sent a swab from the needle, the clear plastic container with brown residue he seized from the table, and a Grizzly can with brown residue, all to the Kansas Bureau of Investigation (KBI) to be tested for narcotics. The swab from the needle and the clear plastic container subsequently tested positive for methamphetamine.

It was also determined that Desseray Ethridge was in the residence with Bales. She was detained while the investigation continued. When she was allowed to return to collect her property, she collected mostly bags that were on the floor. Young did not recall if Ethridge picked up anything from the table. He believed Bales picked up everything from the table.

The State charged Bales with possession of methamphetamine and possession of drug paraphernalia. The case proceeded to a jury trial. The trial consisted of two witnesses, Deputy Young and the KBI laboratory technician. The jury was selected, the testimony received, the jury instructions given, and a verdict returned all by 1:30 p.m. the same day. The jury found Bales guilty of both charges. The district court sentenced him to consecutive terms of 13 months in prison and 6 months in jail, suspended to an 18-month probation term.

Bales timely appealed.

ANALYSIS

I.      THERE WAS SUFFICIENT EVIDENCE TO CONVICT BALES OF POSSESSION OF METHAMPHETAMINE

Bales attacks the sufficiency of the evidence supporting his conviction of possession of methamphetamine. He argues that K.S.A. 21-5706, which prohibits possession of "any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1)," contains an element that the State failed to prove. He argues the statute requires that the substance:  (1) is a stimulant; and (2) is designated in K.S.A. 65-4107(d)(1), (d)(3), or (f)(1). Bales asserts that the State did not present evidence that the methamphetamine Bales possessed (or methamphetamine in general) was a stimulant. He requests this court vacate his conviction.

3

When the sufficiency of the evidence is challenged in a criminal case, an appellate court reviews the evidence "'in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); see *State v. Barnes*, 320 Kan. 147, 177, 563 P.3d 1255 (2025). "'An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *Aguirre*, 313 Kan. at 209; see *Barnes*, 320 Kan. at 177. Additionally, to the extent this analysis calls for interpretation of Kansas statutes, an appellate court's review is unlimited. 320 Kan. at 155; *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

There are two statutes to consider. K.S.A. 21-5706, which prohibits possessing certain controlled substances, provides:

> "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1), and amendments thereto, or a controlled substance analog thereof."

And K.S.A. 65-4107(d), which identifies controlled substances, provides:

> "Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system:
> . . . .
> "(3) Methamphetamine, including its salts, isomers and salts of isomers."

Bales concedes the State proved the substance was methamphetamine through the KBI witness. Under K.S.A. 65-4107(d)(3), methamphetamine is a "substance[ ] having a potential for abuse associated with a stimulant effect." Through this statute, the Legislature defined methamphetamine as a substance associated with a stimulant effect. There is no reason to believe that by prohibiting possession of "any stimulant designated

4

in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1)," the Legislature intended to create an additional, separate element for the State to prove. K.S.A. 21-5706(a). By proving Bales possessed methamphetamine, the State also proved Bales possessed one of the substances designated in K.S.A. 65-4107(d)(3), which has a potential for abuse associated with a stimulant effect on the nervous system.

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear does the court resort to canons of construction or legislative history to construe the Legislature's intent. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022). Here, there is no such ambiguity.

II. THE DISTRICT COURT DID NOT ERR BY FAILING TO GIVE A UNANIMITY INSTRUCTION AS TO THE TWO SEPARATE QUANTITIES OF METHAMPHETAMINE SEIZED

Bales next argues the district court erred by failing to give the jury a unanimity instruction regarding his conviction for possession of methamphetamine. Bales claims the State charged him with one count of possession of methamphetamine based on two different items in two different places and that the jury should have been informed that their verdict had to be unanimous about either or both acts of possession.

A. *Unanimity instructions in general*

A unanimity instruction is used when the State charges one crime but relies on multiple acts to support that one crime. *State v. Sanborn*, 281 Kan. 568, 569, 132 P.3d 1277 (2006). When there are multiple acts, the jury must unanimously agree on which specific act constitutes the crime. 281 Kan. at 569; see K.S.A. 22-3421 (stating that "[i]f

5

any juror disagrees, the jury must be sent out again"); see also *State v. Garcia-Martinez*, 318 Kan. 681, 693-94, 546 P.3d 750 (2024) (examining whether a unanimity instruction was necessary in an aggravated kidnapping case). If the State admits evidence of multiple acts to support one count, the district court must give the jury a unanimity instruction or the State must elect the particular act it relies on for the conviction. *Sanborn*, 281 Kan. at 569.

B. *Our standard of review*

Bales did not request a unanimity instruction. Although we may consider an error in jury instructions for the first time on appeal, our standard of review is different. We review the instruction to determine whether it was clearly erroneous. See K.S.A. 22-3414(3); *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018).

In determining clear error, we look to whether the instruction was factually and legally appropriate. If it was both, we must be firmly convinced the jury would have reached a different verdict if the permissible instruction had been given in order to find the error reversible. *State v. Willis*, 319 Kan. 663, 671, 557 P.3d 424 (2024).

We use a more particularized test, however, when a defendant challenges a district court's failure to give a unanimity instruction in a case potentially involving multiple acts. *Garcia-Martinez*, 318 Kan. at 694. The Kansas Supreme Court has outlined this test:

> "First, we determine whether the case involves multiple acts. Second, if the case does involve multiple acts, we consider whether an error occurred because the district court failed to give a unanimity instruction and the State failed to elect which act it was relying on. Third, if there was an error, we decide whether it requires reversal." 318 Kan. at 694.

So we will begin by determining whether this case involves multiple acts.

6

C. *Multiple acts*

Our Supreme Court has held that "'acts are multiple acts if they are factually separate and distinct.'" *State v. Moyer*, 306 Kan. 342, 360, 410 P.3d 71 (2017). Stated another way, if several acts are alleged and any one of them could constitute the crime charged, the jury must be unanimous as to which act or incident constitutes the crime in such a case. *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003). This determination is a question of law over which an appellate court exercises unlimited review. *State v. Santos-Vega*, 299 Kan. 11, Syl. ¶ 2, 321 P.3d 1 (2014); *Sanborn*, 281 Kan. at 569. If the court finds the case does not involve multiple acts, the analysis ends. See *Garcia-Martinez*, 318 Kan. at 694; *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 (2007).

Generally, Kansas appellate courts use four factors to guide the inquiry into whether there are multiple acts in a case: (1) whether the acts occurred at or near the same time; (2) whether they occurred at the same location; (3) whether an intervening event occurred between the acts; and (4) whether a fresh impulse motivated any portion of the acts. See *Garcia-Martinez*, 318 Kan. at 694; *State v. Harris*, 310 Kan. 1026, 1039, 453 P.3d 1172 (2019).

The threshold question here is whether Bales' possession of methamphetamine in the hypodermic needle in the pocket of his pants and possessing the methamphetamine in the plastic container on the table in the residence were multiple acts requiring jury unanimity as to at least one of those acts, or whether possessing methamphetamine on Bales' person and in the residence were part of a single crime of possession of methamphetamine.

We begin by looking at the factors outlined by our Supreme Court.

(1) *The acts occurred at or near the same time.*

Here the acts occurred at or near the same time. Bales was confronted by law enforcement and exited a house where he claimed he had permission to be. The officer on scene immediately saw the hypodermic needle in Bales' pocket and the residue on his face. Police entered to search the house for other trespassers, where they found a plastic container that they believed contained drugs and seized it.

(2) *The acts occurred at the same location.*

The acts occurred at the same location, in the residence. Deputy Young testified that when he first approached the house, the door was open and Bales was inside. Young had his flashlight trained at the door. Bales came to the door, and Young asked him to walk towards him. Young was 15 to 20 yards away. It was then that Young noticed the needle in Bales' front pocket and "a brown substance on his face [and] around his lips." So although the needle may have been outside the residence when it was first seen by the officer, the evidence was clear that the needle had been in the residence where the plastic container was also located. Bales' face, the needle, and the plastic container all had a brown substance or residue, later identified—at least as to the needle and container—as methamphetamine.

(3) *No intervening event occurred between the acts.*

There was no intervening event. This offense was a continuous act from the investigation of trespassing to finding the drugs on Bales' person, to the owner of the property confirming the trespass, to the trespassers' items being gathered and removed from the property. The acts forming the basis of the charge took place during a short window of time and involved a single course of conduct—trespassers inside an unoccupied home with drugs. They were not separated by distinct time periods.

8

(4) *No fresh impulse motivated any portion of the acts.*

A "fresh impulse" refers to a new or independent motivation that drives a subsequent act, distinguishing it from prior acts. "Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by a 'fresh impulse.'" *State v. Unruh*, 281 Kan. 520, 527, 133 P.3d 35 (2006) (quoting *State v. Kesselring*, 279 Kan. 671, 683, 112 P.3d 175 [2005]).

Bales correctly points out that Kansas courts have consistently held that when the same drug is found in various locations in either a defendant's car or home, and the State charges the defendant with possession of that drug based on the theory that the defendant constructively possessed all of it, the State is not relying on multiple acts and a unanimity instruction is not required. See *Unruh*, 281 Kan. at 529 (finding the case did not involve multiple acts where State alleged defendant constructively possessed all methamphetamine found in the van); *State v. Alvarez*, 29 Kan. App. 2d 368, 370, 28 P.3d 404 (2001) (holding State did not rely on multiple acts and unanimity instruction not required when State charged defendant with one count of possession of methamphetamine based on allegation that defendant constructively possessed all methamphetamine discovered in defendant's car); *State v. Hazley*, 28 Kan. App. 2d 664, 671, 19 P.3d 800 (2001) (concluding "[t]here were no truly multiple acts on which the prosecution relied" requiring unanimity instruction when State charged defendant with possession of methamphetamine based on theory that defendant constructively possessed all methamphetamine found simultaneously throughout defendant's home).

Here Bales argues that he is not relying on a unified defense. He asserts he offered distinct theories in his defense for the two acts. In closing, the defense argued the State failed to prove the plastic container was Bales' and suggested it could have been the property of the other person in the home at the time of the search. The defense challenged the testability of the "infinitely small" residue located in the container. The defense also

9

challenged the fact that the needle was tested for methamphetamine through a swab rather than direct testing, suggesting it took "extraordinary measures to get a positive test." Bales cites *State v. De La Torre*, 300 Kan. 591, 599, 331 P.3d 815 (2014), in which our Supreme Court stated, "'Kansas appellate courts have held a "failure to instruct" in multiple acts cases to be reversible error except when the defendant presents a unified defense, e.g., a general denial. If there is no unified defense, we do not tolerate verdict uncertainty in these cases.'" Yet the Kansas Supreme Court has also explained, "the defendant's defense strategy is merely an important and compelling factor in firmly convincing the reviewing court that the jury would have reached a different verdict had the instruction error not occurred." *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013).

But when we look further at cases involving a fresh impulse we find that while a unified defense may make a multiple acts determination easier, it is not a final determining factor. Certainly when possession is simultaneous versus sequential, a fresh impulse would be difficult to establish. But at least one panel of our court has discussed this in terms of different impulses rather than fresh impulses.

In *State v. Crudo*, 62 Kan. App. 2d 464, 492, 517 P.3d 857 (2022), the panel distinguished between an impulse to distribute the drug versus an impulse for personal use. In *Crudo*, 19 bags of marijuana were found in the bathtub of a camper while a small amount of marijuana and rolling papers were found in a different part of the camper. The panel found these were distinct impulses—distribution versus personal use—and it was not unitary conduct, albeit for a double jeopardy analysis not a unanimity analysis. 62 Kan. App. 2d at 492. But it would make sense that in such a situation, a unanimity instruction would be needed because the drugs were clearly for different purposes supporting different charges.

10

Here we have no fresh or distinct impulse. We have a trespasser in a house with a container with methamphetamine residue and a needle with the same residue indicating he is using methamphetamine in the house. This is unitary conduct. The needle in Bales' pocket supports the circumstantial evidence connecting him to the plastic container containing methamphetamine in the house, all indicating personal use.

Because we find this case does not involve multiple acts our analysis ends. The district court did not err in failing to give a unanimity instruction.

Affirmed.