(11 P.3d 520)
No. 82,335

STATE OF KANSAS, *Appellee,* v. ANTHONY C. SMITH, *Appellant.*

Opinion filed October 13, 2000.

*Karen Eager*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Joe E. Lee*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT P.J., PIERRON and GREEN, JJ.

GREEN, J.: Anthony C. Smith was convicted by a jury of possession of cocaine and failure to have a drug tax stamp. The jury acquitted him of possession of drug paraphernalia. On appeal, Smith argues (1) that the State's cross-examination of him constitutes plain error, (2) that the trial court erred by allowing the State to introduce evidence regarding the sentence ranges for a possession of cocaine conviction, and (3) that the State committed prosecutorial misconduct by repeatedly referring to him as a liar. We reverse and remand for a new trial.

On April 2, 1997, police executed a search warrant on Smith's mother's home. The search warrant authorized the police to search for items related to a robbery for which Smith was a suspect. When the search warrant was executed, Smith was not living at his mother's home.

Police knocked on the front door of the home, but no one answered. One of the officers noticed an individual near the back door of the residence, and the order was given to kick in the front door. The officers found Smith inside the residence.

During the search of the home, the police did not find any items relating to the robbery. In a bathroom cabinet, however, officers found a brown paper sack that contained drug paraphernalia, syringes, a white substance later determined to be cocaine, and a receipt from Grave's Drug Store for the syringes. The sales receipt was dated April 2, 1997, the day the search warrant was executed.

The officers read Smith his *Miranda* rights and questioned him about the drugs found in the bathroom. Smith denied owning the drugs and told police that he was not living in the house. The officers then asked Smith whether the drugs belonged to his mother. Smith testified that the police threatened to have his mother arrested for possession of cocaine if he did not confess that

the drugs were his. Smith then asked to speak to Officer Ron Davis who was a family friend.

Smith told Officer Davis that he had been watching drug dealers to see where they hid their drugs. According to Smith, that morning he retrieved drugs stashed by drug dealers at a laundromat and hid the drugs in a cabinet in his mother's house. Smith was charged with possession of cocaine, possession of paraphernalia, and failure to have a drug tax stamp.

At trial, an employee from Grave's Drug Store testified that sometime after 9 a.m. on April 2, 1997, she sold syringes to a tall black man. The employee was unable to identify Smith as the individual who purchased the syringes.

Bradley Kevin Harvey testified that he and Dwight Baker went to Grave's Drug Store on April 2, 1997, and that Baker purchased the syringes. After purchasing the syringes, Harvey and Baker went to Smith's mother's home where they stashed the bag in the bathroom cabinet. Harvey and Baker then went to buy some beer. Upon returning to the residence, they saw the police cars and left.

Harvey testified that the contents of the brown paper bag belonged to him. The State, however, sought to discredit Harvey's testimony by trying to establish that Harvey had a motive to lie. According to the State, Harvey's motive to lie was that if he were convicted of possession of cocaine, he would receive a nonprison sentence. Harvey, however, denied having any knowledge of the Kansas Sentencing Guidelines and denied discussing the guidelines with anyone prior to his testimony. Moreover, Harvey believed that if he were convicted he would automatically go to prison.

To establish that Harvey had a motive to lie about possessing the cocaine, the State called Lyon County District Attorney Joe Lee as a rebuttal witness. Smith objected to Lee's testimony as irrelevant, improper, and creating impermissible inferences of both Harvey's and Smith's criminal histories. The objection was overruled and the State asked Lee hypothetical questions regarding the sentence a person would face for a conviction of possession of cocaine if the offender did not have a criminal history or if the offender's criminal history consisted of either one nonperson felony or misdemeanors.

*State's Cross-Examination of Smith*

Smith argues that the State committed plain error when cross-examining him. Specifically, Smith contends that the State improperly asked him to comment on the veracity and credibility of the State's witnesses.

As noted by the State, however, Smith failed to object to this type of questioning. A point not raised in the trial court cannot be raised for the first time on appeal. *State v. McDaniel*, 255 Kan. 756, 765, 877 P.2d 961 (1994). Because Smith failed to present this argument to the trial court, he is precluded from raising the issue on appeal.

*Evidence of Sentence Ranges for Possession of Cocaine Conviction*

Smith next argues that the trial court erred when it allowed the State to impeach Harvey by presenting evidence regarding the sentence ranges for a possession of cocaine conviction if the offender did not have a criminal history or if the criminal history was minimal. Smith timely objected to this sentencing evidence. Because the State's unique method of impeachment has not been tested in the Kansas appellate courts, the issue of whether the State may present evidence of sentence ranges to impeach a witness' credibility is an issue of first impression.

*Improper Method of Impeachment*

Smith contends that the expert testimony regarding the sentence ranges was an improper method of impeaching a witness. The State sought to discredit Harvey's testimony that the drugs were his by showing that he had a motive to lie. According to the State, Harvey was motivated to lie for Smith because Harvey would receive a nonprison sentence for a conviction of possession of cocaine. However, although Harvey testified that he had not been convicted of possession of cocaine after the defense failed to object to an improper question by the State, no evidence was presented establishing his criminal history.

The admission of rebuttal evidence lies within the sound discretion of the trial court, and the trial court's ruling will not be re-

versed absent a clear abuse of the exercise of that power of discretion. *State v. Davis*, 237 Kan. 155, 159, 697 P.2d 1321 (1985).

Use of the sentencing evidence was not a proper method of impeachment because the evidence was inadmissible under our rules of evidence. K.S.A. 60-420 provides: "Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party . . . may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility." In addition, K.S.A. 60-421 states that "[e]vidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility." K.S.A. 60-422 places further limitations on admissibility of evidence affecting the credibility of a witness. The pertinent sections of the statute are (c) and (d), which prohibit "evidence of traits of [the witness'] character other than honesty or veracity or their opposites" and "evidence of specific instances of [the witness'] conduct relevant only as tending to prove a trait of his or her character."

The State theorized that Harvey was motivated to lie for Smith because Harvey was only risking probation by admitting that the drugs were his. To prove this conclusion, the State needed to supply three premises: (1) that Harvey did not have a criminal history, (2) that an individual without a criminal history would receive presumptive probation under the Kansas Sentencing Guidelines Act, and (3) that presumptive probation is a motive to lie. Our rules of evidence, however, prevented the State from presenting evidence of Harvey's criminal history. See K.S.A. 60-421; K.S.A. 60-422.

Even though the State did not present evidence of Harvey's criminal history, it nevertheless introduced evidence on the sentence ranges for a conviction of possession of cocaine. The State presented hypothetical evidence as to the punishment for a conviction of possession of cocaine if the offender did not have a criminal history. Under these circumstances, however, hypothetical questioning was not an acceptable method of impeachment.

First, the hypothetical questions were not proper impeachment because the State failed to frame the questioning so as to recite all

the facts in evidence which were relevant to the formation of the expert opinion. See *Staudinger v. Sooner Pipe & Supply Corporation*, 208 Kan. 100, 106, 490 P.2d 619 (1971). The State asked the expert witness general questions regarding the punishment for a conviction of possession of cocaine if the offender did not have a criminal history. Although this line of questioning was intended to impeach Harvey, the State did not frame the questions so as to ask specifically about the punishment Harvey would receive if he was convicted of possession of cocaine. As a result, the jury was left to speculate as to who the sentencing evidence was intended to impeach.

Although the State did not explicitly link the sentencing evidence to Harvey, the connection was strongly inferred. As such, the hypothetical questioning unfairly suggested that Harvey did not have a criminal history, a fact which was not in evidence. "The rule of this jurisdiction is that hypothetical questions put to an expert witness *should be based upon only such facts as the evidence tends to prove*, and if as to any material hypothesis, such question is without the support of the evidence, it should be excluded." (Emphasis added.) *Miles v. Schwan Distributing Co., Inc.*, 214 Kan. 656, 657, 522 P.2d 435 (1974). Moreover, "[a] hypothetical question which distorts instead of reflecting the evidence should not be permitted." *New York Life Ins. Co. v. Doerksen*, 75 F.2d 96, 102 (10th Cir. 1935). Because the State's hypothetical questions were not based on facts in evidence, the State improperly inferred that Harvey did not have a criminal history. The sentencing evidence which inferred that Harvey did not have a criminal history was inadmissible under K.S.A. 60-422(c) and (d) because the evidence was improper character evidence in that it did not go to honesty or veracity.

The sentencing evidence not only implied that Harvey did not have a criminal history, but also suggested that Smith did have a criminal history since, according to the State, it was necessary for someone other than Smith to assume responsibility for the drugs. Even though the State told the trial court that "it is not my intention to compare the defendant with the witness," the sentencing evidence undoubtedly caused the jury to make that comparison.

The implication that a defendant committed crimes in the past is improper because it unfairly prejudices the jury against the defendant. See *State v. Hutcherson*, 25 Kan. App. 2d 501, 506-07, 968 P.2d 1109 (1998) (holding that the defendant did not receive a fair trial because the prosecution referred to the defendant as a criminal and made other derogatory statements during closing argument). The prosecutorial misconduct aspect of the State's implication that Smith is a criminal is addressed more fully below. Nevertheless, the State's hypothetical questioning of the expert witness improperly inferred that Smith had a criminal history. K.S.A. 60-421 prohibits evidence that a witness has been convicted of a crime, unless the criminal act involved dishonesty or false statement. Moreover, when the witness is a defendant, this statute bars all evidence of previous convictions involving crimes of dishonesty or false statements unless the defendant "opens the door" by introducing evidence of his credibility. *State v. Logan*, 236 Kan. 79, 83, 689 P.2d 778 (1984).

*Opening the Door for Inadmissible Evidence*

Now, we must turn our attention to whether Smith opened the door for the admission of the sentencing evidence. "[W]hen a defendant opens an otherwise inadmissible area of evidence during the examination of witnesses, the prosecution may then present evidence in that formerly forbidden sphere." *State v. Johnson*, 258 Kan. 475, 481, 905 P.2d 94 (1995). Smith, however, did not present evidence that Harvey was risking something by testifying on Smith's behalf. As a result, Smith did not open the door for the State to present inadmissible evidence on the punishment for a conviction for possession of cocaine.

Although the defendant may open the door for the State to present inadmissible evidence, the State cannot open the door for itself. In *State v. McClanahan*, 259 Kan. 86, Syl. ¶ 1, 910 P.2d 193 (1996), our Supreme Court held: "The rule that a party can open the door to otherwise inadmissible evidence applies only when one party opens the door for another party to present such evidence. A party cannot open the door for itself to present the inadmissible evidence."

The State used the evidence that Harvey has not been convicted of possession of cocaine to open the door to the sentencing guidelines evidence. After defense counsel objected to the testimony on the sentencing ranges, the State argued the following to the trial court outside the presence of the jury:

"Mr. Lee is being called to show the jury that Mr. Harvey has a motive to lie. He is not risking anything by lying here. He's gotten on the stand and testified he has *no prior convictions for possession of cocaine*. I expect Mr. Lee to testify that if convicted of possession of cocaine with *no prior convictions* his presumptive sentence would be nonprison, would be probation." (Emphasis added.)

The State's assertion that Harvey does not have a criminal history is not logically valid. Just because Harvey has not been convicted for possession of cocaine does not mean he lacks a criminal history. Harvey may have been convicted of other offenses which would affect his criminal history score. The State substituted the premise that Harvey does not have a conviction for possession of cocaine for the premise that he does not have any convictions at all. By doing this, the State used Harvey's response to its improper question to convince the trial court that the sentencing evidence should be admitted.

Although the State may not open the door for inadmissible evidence, that is precisely what occurred. The State used Harvey's statement that he had not been convicted of possession of cocaine to open the door for the testimony on the sentencing guidelines. The State's scheme contradicts K.S.A. 60-422 because evidence of Harvey's character and specific instances of conduct were improperly introduced. As a result, we find that the door had not been opened for the State to present the inadmissible sentencing evidence.

Furthermore, a "prosecutor is under a duty to insure that only competent evidence is submitted to the jury." *State v. Ruff*, 252 Kan. 625, 636, 847 P.2d 1258 (1993). Here, the State violated that duty by putting the improper sentencing evidence before the jury. As a result, we find that the expert testimony on the sentencing evidence was not a proper method of impeachment and was inadmissible under our rules of evidence.

*Relevancy*

Another reason the expert testimony should not have been admitted is that the evidence was irrelevant. Relevant evidence is evidence having any tendency in reason to prove any material fact. K.S.A. 60-401(b). Evidence is rejected for remoteness " ' "[w]hen the fact or facts proposed to be established as a foundation from which indirect evidence may be drawn, by way of inference, have not a visible, plain, or necessary connection with the proposition eventually to be proved.' " (Citation omitted.)" *State v. Pichon*, 15 Kan. App. 2d 527, 533, 811 P.2d 517 (1991).

We see no justification for the admission of the sentencing evidence for purposes of impeachment. The expert testimony was remote because the sentencing evidence did not have a plain connection to the State's theory that Harvey was motivated to lie for Smith. As noted previously, the sentencing evidence consisted only of testimony as to the sentence for an offender without a criminal history or a minimal criminal history. Because the expert witness did not testify as to what type of criminal history that Harvey possessed and what type of sentence he would receive for a conviction for possession of cocaine, the testimony was not logically related to the State's impeachment theory.

Moreover, the connection between the sentencing evidence and the State's theory that Harvey lied to protect Smith requires an unrealistic leap of faith. It is difficult to understand how an individual is not risking anything by admitting that he or she committed a felony. A felony conviction results in serious consequences, including the creation of a criminal history and difficulty obtaining employment. Moreover, even if an offender would have no previous criminal history and would qualify for *presumptive* probation, there is no guarantee that the offender would get probation. If certain departure factors were met, the offender would be sentenced to prison. See K.S.A. 21-4717; K.S.A. 21-4718; K.S.A. 21-4719. Even if the offender does get probation, that punishment is a significant restriction on the offender. Because a first-time offense of possession of cocaine carries relatively steep repercussions, the State's theory that Harvey was risking little by falsely testifying

is not logical. As a result, we are left with the undeniable conclusion that the admission of the sentencing evidence was erroneous.

Next, we must determine whether the admission of the sentencing evidence was harmless error. The question of harmless error in criminal cases was addressed in *State v. Sanders*, 258 Kan. 409, 418, 904 P.2d 951 (1995), *rev'd on other grounds State v. Bedford*, 269 Kan. 315, 7 P.3d 224 (2000). The *Sanders* court noted that "[e]rror in the admission or exclusion of evidence by the court is not grounds for granting a new trial or setting aside a verdict unless refusal to take such action appears to the court inconsistent with substantial justice."

Here, the trial court's erroneous admission of the sentencing evidence is inconsistent with substantial justice. The error affirmatively prejudiced Smith's substantial rights because the sentencing evidence inferred that Smith was a criminal and unfairly discredited his key witness. The sentencing evidence was especially prejudicial considering that no physical evidence connected Smith to the cocaine. After consideration of all of the evidence, we hold the trial court's admission of the sentencing evidence was not harmless error under the facts and circumstances of this case.

*Prosecutorial Misconduct*

Smith also contends that the State committed prosecutorial misconduct by repeatedly referring to him as a liar during closing argument. The State argues that Smith did not object to the prosecutor's statements and, furthermore, that the statements were not so gross and flagrant as to prejudice Smith's right to a fair trial and require a reversal.

Our Supreme Court recently reviewed the standard of review for prosecutorial misconduct during closing argument in *State v. Pabst*, 268 Kan. 501, 996 P.2d 321 (2000). The *Pabst* court, in finding reversible error when the State called the defendant a liar during closing argument, noted:

"Reversible error predicated on prosecutorial misconduct must be of such a magnitude as to deny a defendant's constitutional right to a fair trial. See *State v. Sperry*, 267 Kan. 287, 308, 978 P.2d 933 (1999). Some complained-of prosecutorial statements were not objected to at trial. If the claimed error has been

determined to implicate a defendant's right to a fair trial, our standard of review is the same whether or not an objection was made at trial. If the claimed error rises to the level of a denial of the Fourteenth Amendment right to due process, the issue will be addressed. *State v. McCorkendale*, 267 Kan. 263, Syl. ¶ 6, 979 P.2d 1239 (1999).

. . . .

"The analysis of the effect of a prosecutor's alleged improper remarks in closing argument is a two-step process. First, we decide whether the remarks were outside the considerable latitude the prosecutor is allowed in discussing the evidence. In criminal trials, the prosecution is given wide latitude in language and in manner or presentation of closing argument as long as the argument is consistent with the evidence. Second, we must decide whether the remarks constitute plain error; that is, whether they are so gross and flagrant as to prejudice the jury against the accused and deny a fair trial, requiring reversal. *State v. Lumley*, 266 Kan. 939, Syl. ¶ 12, 976 P.2d 486 (1999)." 268 Kan. at 504-05.

Several other recent cases found reversible error where the State called the defendant a liar during closing arguments. See, *e.g.*, *Hutcherson*, 25 Kan. App. 2d at 506-07 (holding that the defendant did not receive a fair trial because the prosecution called the defendant a liar, a criminal, and a drug dealer during closing argument); *State v. Lockhart*, 24 Kan. App. 2d 488, 947 P.2d 461, *rev. denied* 263 Kan. 889 (1997) (finding reversible error where the prosecutor suggested that the defendant and defense counsel were lying to the jury).

Unlike the defendants in the above-cited precedents, Smith made an issue of his veracity by giving inconsistent statements. First, Smith told Officer Davis that he stole the drugs from drug dealers and hid the drugs in his mother's house. At trial, however, Smith changed his story and testified as follows:

"And that's when I went into a bold-faced lie, a story, that Ron Davis set there eye to eye and Ron Davis knew I was lying about staying up all night watching drug dealers hide dope under cars, in holes in the walls, you know. That's common knowledge if you watch TV or cops, you know, and that's basically where this story came from. And I was just trying to make a deal. Told Ron Davis that I knew some drug dealers that I was willing to give up to him if he can get this drug squashed where nobody . . . would have no repercussions; I wouldn't be charged with it and no one at my mother's house would be charged with it. And that's when I went and told Ron Davis about this story."

Smith further testified that after speaking with Officer Davis, he learned that the drugs belonged to Harvey.

During closing arguments, the State made the following comments regarding Smith's inconsistent statements:

"The defendant wants you to believe that he was lying back in April [when he spoke with Officer Davis]. *There is no doubt whatsoever that he's a liar. Given the best picture here, the best for him, he's lying in April. He's definitely a liar one way or another. He's lied.* He wants you to believe it was back then. He wants you to believe that with all the details he gave back then, he wants you to believe that with all the physical evidence that was seen back then that verified his story back then that that's the lie.

. . . .

". . . The defendant has disagreed with everyone whose testimony could hurt him. Even people who have absolutely no reason to lie about this. *The defendant only wants you to believe a liar [Smith]* and the guy [Harvey] who came in here risking almost nothing who said on the stand, I would do anything I could for him. What do you believe? The guy who testified this morning, his statement can't be corroborated by any kind of physical evidence." (Emphasis added.)

Prosecutors are given wide latitude to craft an argument that includes reasonable inferences based on the evidence. "When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury." *Pabst*, 268 Kan. at 507.

Here, it was permissible for the State to point out the inconsistencies in Smith's statements. Both versions of Smith's story cannot be true and at least one of the versions must be fabricated. By telling inconsistent stories, Smith opened the door for the State to comment on the reasonable inference that his testimony was not believable. Specifically, it was permissible for the State to argue that Smith's testimony that the drugs belonged to Harvey was not credible based on his statement to Officer Davis.

Nevertheless, it was the duty of the jury, not the State, to ultimately decide which, if any, of Smith's statements was believable. As such, the prosecutor should have confined his arguments to what the evidence showed: Smith's statements were inconsistent. Instead of simply pointing out the inconsistencies in Smith's statements and noting that at least one of the stories must be fabricated,

the prosecutor used prejudicial language when he made statements such as, "There is no doubt whatsoever that he's a liar."

Although the State is permitted wide latitude in closing argument and may point out inconsistencies in a defendant's statements, we find that the State committed prosecutorial misconduct by repeatedly referring to Smith as a liar. The State's unprofessional comments on the evidence lie far beyond the traditional wide latitude afforded to prosecutors in closing argument. See *Lockhart*, 24 Kan. App. 2d at 492. As a result, even though Smith opened the door for fair comment on his veracity, we find that the prosecutor committed prosecutorial misconduct by repeatedly referring to Smith as a liar during closing arguments.

The remaining question is whether the prosecutor's improper statements denied Smith a fair trial by unfairly prejudicing the jury against him. See *State v. Whitaker*, 255 Kan. 118, Syl. ¶ 7, 872 P.2d 278 (1994). Specifically, we must determine whether the remarks are so gross and flagrant as to prejudice the jury against Smith and deny him a fair trial. *Pabst*, 268 Kan. at 505.

We find that Smith did not receive a fair trial. The improper remarks of the prosecutor during closing argument coupled with the ongoing inference that Smith was a criminal were so gross and flagrant as to prejudice the jury against Smith. The prosecutorial misconduct began during the presentation of the evidence when the State insinuated that Smith had a criminal history and continued through closing argument when the State repeatedly called Smith a liar. It cannot be said that the cumulative nature of the State's misconduct did not prejudice Smith's right to a fair trial, especially considering the fact that no physical evidence connected Smith to the drugs.

## Assessment of Punishment by the Jury

Finally, Smith argues that testimony regarding the possible sentences for a conviction of possession of cocaine improperly placed the assessment of punishment and the disposition of the case before the jury. This argument is flawed because the jury was instructed on PIK Crim. 3d 51.10: "Your only concern in this case is determining if the defendant is guilty or not guilty. The disposition

of the case thereafter is a matter for determination by the Court." Because the jury was instructed that it was not its duty to consider Smith's penalty, Smith's argument fails.

Reversed and remanded for a new trial.