NOT DESIGNATED FOR PUBLICATION

No. 122,591

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MINNIE ELIZABETH WIDENER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed September 10, 2021.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., HILL and ISHERWOOD, JJ.


PER CURIAM:  This is a direct appeal by Minnie Elizabeth Widener of her convictions by a jury for possession of methamphetamine and possession of marijuana. Widener raises four issues on appeal. First, she contends there was insufficient evidence to support her conviction for possession of methamphetamine. Second, Widener argues that the district court erred by not giving a nonexclusive possession jury instruction. Third, she asserts the district court erred by not giving a limiting jury instruction regarding prior crimes evidence under K.S.A. 2019 Supp. 60-455. Finally, she claims that cumulative errors deprived her of a fair trial.

1

Upon our review, we find no reversible error by the district court and, therefore, affirm the convictions.

FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 2019, the Hutchison Police Department executed a search warrant at a duplex in which Widener resided. The search warrant was obtained after Detective Travis Lahann witnessed what he believed were two separate drug transactions involving Widener and other individuals at the duplex on January 4 and 7, 2019.

During the execution of the search warrant, only Widener was inside the residence. A quantity of marijuana was found concealed in the clothing she was wearing. Quantities of methamphetamine and marijuana, smoking devices, two scales, syringes, spoons, cotton swabs, and numerous small clear plastic baggies—a few of which contained methamphetamine—were found throughout the residence.

Widener was charged with possession of methamphetamine with intent to distribute within 1,000 feet of a school in violation of K.S.A. 2018 Supp. 21-5705(a)(1), (d)(3)(C), (d)(5); possession of drug paraphernalia with intent to manufacture, plant, or cultivate a controlled substance in violation of K.S.A. 2018 Supp. 21-5709(b)(1), (e)(2)(A); and possession of marijuana in violation of K.S.A. 2018 Supp. 21-5706(b)(3), (c)(3)(B). Widener pled not guilty and requested a jury trial.

As discussed more fully in the analysis, before trial Widener filed a motion in limine to preclude the State from admitting evidence of prior crimes or bad acts. For its part, the State moved to admit K.S.A. 2019 Supp. 60-455(b) evidence of Widener's 1989 criminal conviction for possession of methamphetamine with intent to sell. Additionally, the State sought to admit evidence of Detective Lahann's surveillance observations prompting the January 8 search warrant, as a "pattern of conduct" indicative of controlled

2

substance distribution. The district court granted Widener's motion in limine and took the State's motion under advisement.

The jury trial began on December 10, 2019. During the trial, the district court ruled that the surveillance evidence was not K.S.A. 2019 Supp. 60-455 evidence and admitted it at trial.

After the State rested its case, Widener moved for a directed verdict, arguing that the State failed to present a prima facie case of possession with intent to distribute. The district court denied the motion. The defense did not present evidence at trial. During the jury instructions conference neither a nonexclusive possession instruction nor a K.S.A. 2019 Supp. 60-455(b) limiting instruction was requested by the parties and neither instruction was given to the jury.

The jury found Widener guilty of possession of marijuana and the lesser included offense of possession of methamphetamine. Widener was acquitted of possession of drug paraphernalia with intent to manufacture, plant, or cultivate a controlled substance. On January 24, 2020, the district court sentenced Widener to a controlling 17-month sentence and granted presumptive probation. Widener timely appeals.

SUFFICIENCY OF EVIDENCE OF POSSESSION OF METHAMPHETAMINE

Widener contends there was insufficient evidence that she possessed methamphetamine. She claims that her partner, Ernesto Cabral, shared a bedroom with her and that her son also lived in the residence. The State counters that there was considerable evidence throughout Widener's residence to show her use and possession of methamphetamine.

When reviewing whether the record shows sufficient evidence to support a conviction of a crime, an appellate court views the evidence in a light most favorable to the State. Moreover, in our review we do not reweigh evidence or make credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). To the extent that we must interpret and apply the statutory definition of possession, our review is unlimited. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

The offense of possession of methamphetamine required the State to prove that Widener knowingly possessed methamphetamine on January 8, 2019. See K.S.A. 2018 Supp. 21-5706(b)(2). "Possession of a controlled substance requires specific intent to exercise control over the substance, with knowledge of the nature of the substance." *State v. Keel*, 302 Kan. 560, Syl. ¶ 1, 357 P.3d 251 (2015). Possession may be established by proving the defendant had exclusive control, joint control with another person, or constructive control such as when the item is kept in a place over which the defendant has access and a right of control. *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009).

Importantly, in this case the district court provided the jury with a definition of possession as found in K.S.A. 2018 Supp. 21-5701(q). Instruction No. 7 informed the jury: "'Possession' means having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2018 Supp. 21-5701(q).

Although Widener argues the State relied on impermissible "inference stacking" to obtain a conviction, "[i]mpermissible inference stacking is not present where different circumstances are used to support separate inferences or where multiple pieces of circumstantial evidence separately support a single inference." *State v. Banks*, 306 Kan. 854, Syl. ¶ 3, 397 P.3d 1195 (2017). A verdict may be supported by circumstantial evidence and, to be sufficient, the evidence need not exclude every other reasonable

4

conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). "If an inference is a reasonable one, the jury has the right to make the inference." *State v. Rosa*, 304 Kan. 429, Syl. ¶ 2, 371 P.3d 915 (2016). The State may prove possession and intent, like any element of a crime, by circumstantial evidence. *State v. Marion*, 29 Kan. App. 2d 287, 290, 27 P.3d 924 (2001).

Given the totality of evidence presented to the jury and viewing the evidence in a light most favorable to the State, we are convinced there was sufficient evidence to prove beyond a reasonable doubt that Widener possessed methamphetamine on January 8, 2019.

On January 8, 2019, at the time of the execution of the search warrant, Widener was the only person in the residence. Evidence showed the utilities were registered in Widener's name. Her driver's license was the only item of personal identification found in the residence. No other identification documents were found in the home. When Widener insisted that she needed to use the restroom, an officer searched her and found a small bag of marijuana hidden in her bra.

As the officers searched the residence, they found methamphetamine and marijuana, in addition to drug paraphernalia throughout the home. The residence had only one bedroom which contained stickers on the door with the names "Liz and Ernesto." In that bedroom, two boxes were found under the bed. Inside one box were three smoking devices—two of which had white residue inside it, and the third with green residue. The other box was a jewelry box containing jewelry and 150 unused clear, plastic baggies.

Next to the bed was a small, plastic tote with drawers. The top drawer had two small, plastic baggies with a white, crystalline substance inside, and a zippered cloth bag containing four small, plastic baggies with a white, crystalline substance inside. In the

5

second drawer, a small, white container with a large amount of unused, small, clear, plastic baggies and a scale were found.

In the main living area of the residence, the officers found a jean jacket hanging on the wall. In a side pocket of the jacket a small plastic bag of crystalline white substance was found. In the only bathroom in the residence, the officers found a used needle and a small bag of green vegetation. In the basement, which appeared to be another living area, a scale was found on top of a coffee table. Underneath the table was a container with syringes, spoons, and cotton swabs. Straws, which the officers believed were used to ingest methamphetamine, were also found in the residence. The white crystalline substances that were tested yielded 5.11 grams of methamphetamine.

While Widener argues on appeal that the evidence was insufficient to prove that she possessed methamphetamine, during the jury trial defense counsel had a markedly different point of view. Defense counsel's opening statement was a clear and emphatic concession to the jury that Widener was a methamphetamine addict who possessed methamphetamine at various locations in her residence on the day the search warrant was executed:

> "Good morning, Ladies and Gentlemen of the Jury. There's not a whole lot in dispute in this case other than whether or not Minnie Widener actually possessed methamphetamine with intent to sell, or whether she possessed methamphetamine with intent to use. Minnie Widener is a methamphetamine addict. It's unfortunate. Many people have various addictions. That's Minnie's. . . . Now, the evidence will not show though that she possessed this methamphetamine with intent to sell it as the State alleges. Rather the Defense believes she's an addict with a bad meth addiction. The evidence will show that. You will see used needle, after used needle. You will see spoons. You will see cotton swabs. You will see methamphetamine. You will see scales, but all those things can be used for more than just, more than just simply selling methamphetamine or distributing it. They all can be used, such as a scale could be used, . . . to make sure a

6

person doesn't overdose and die from using something that they know is harmful but they're addicted to anyway.

"... *This is a person who has an addiction, who is hiding her drugs throughout the house.* Not a meth dealer. . . .

"Rather, the evidence will show in this case that Minnie Widener is a user and an addict of methamphetamine. So the bottom line is that Minnie Widener is a user." (Emphasis added.)

Although Widener may have shared the residence with another person, the fact that the methamphetamine and other drug paraphernalia were in her bedroom and throughout her residence—much of it in plain view—was sufficient for a jury to reasonably infer that, as defense counsel conceded in his opening statement, Widener possessed the methamphetamine.

Viewing the evidence in a light most favorable to the State, we are firmly convinced that a rational fact-finder could have found Widener guilty of possession of methamphetamine beyond a reasonable doubt. We find no error.

FAILURE TO GIVE A JURY INSTRUCTION ON NONEXCLUSIVE POSSESSION

Despite Widener's failure to request a jury instruction on nonexclusive possession at trial, for the first time on appeal, she contends the district court's failure to instruct the jury in this regard was reversible error. While questioning the merits of Widener's claim, the State primarily argues that there is no showing that the jury would have reached a different verdict had the nonexclusive possession instruction been given.

We begin the analysis with our standards of review.

"When analyzing jury instruction issues, we follow a three-step process:

7

'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;

(2) considering the merits of the claim to determine whether error occurred below; and

(3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 307 Kan. at 317; K.S.A. 2018 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

At the second step, appellate courts consider whether the instruction was legally and factually appropriate. 307 Kan. at 318. Appellate courts have unlimited review to determine whether an instruction was legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). Courts should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

At the third step—which is particularly relevant to this appeal—if the challenging party did not object to the jury instruction below, the appellate court applies the clear error standard and will only reverse if "'the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

Was an instruction on nonexclusive possession legally appropriate? As stated earlier, possession means to have control over something with knowledge of and intent to have such control. It can be exclusive, jointly held with another, or constructive, which, at minimum, requires that the individual knowingly keep the methamphetamine in a place where they have some measure of access and right of control. *Beaver*, 41 Kan. App. 2d at 129. Of note, the Kansas Pattern Instructions include a "nonexclusive possession" instruction as part of the pattern instructions for possession cases. See PIK Crim. 4th 57.040 (2018 Supp.). A nonexclusive possession instruction was legally appropriate under the circumstances.

The jury instruction must also be factually appropriate. Whether an instruction is factually appropriate is as simple as showing the defendant was not the only individual with access to the premises or vehicle where the drugs were discovered. See *State v. Hazley*, 28 Kan. App. 2d 664, 672-73, 19 P.3d 800 (2001); *State v. Judd*, No. 112,606, 2016 WL 2942294, at *6 (Kan. App. 2016) (unpublished opinion).

There was some limited evidence regarding whether other people lived in Widener's residence. Cabral's name was written in stickers on Widener's bedroom door, and some men's clothing was found in the basement of the home. For its part, the State does not challenge the notion that others may have had access to the residence but argues that Widener's defense was that she alone possessed all the methamphetamine for personal consumption which contradicted the State's theory that she was a dealer in methamphetamine.

When the State and defendant offer competing reasons why the requested instruction was or was not factually appropriate, the appellate court may move straight to the harmlessness inquiry. *State v. Salary*, 301 Kan. 586, 598-99, 343 P.3d 1165 (2015). Thus, we will assume—without deciding—that the nonexclusive use instruction was both legally and factually appropriate.

Next, we consider harmlessness or whether the omission of the instruction was clearly erroneous. Reprising our analysis in the prior section relating to the sufficiency of evidence, Widener's trial strategy was to admit addiction to methamphetamine and claim that the methamphetamine found in her home was kept purely for personal use, as opposed to selling it to others. Defense counsel argued to the jury that, although the amount of methamphetamine found in Widener's home was over the statutory threshold for a rebuttable presumption of intent to distribute, someone as highly addicted as Widener would have consumed all that methamphetamine in about 10 days. Defense counsel also argued in his closing argument that his client "can't get away from the fact that Minnie Widener has methamphetamine in the house. That's also true. What is not true is that Ms. Widener possessed the methamphetamine with the intent to sell in this case." By their verdict, the jurors took defense counsel's words to heart and determined that Widener possessed but did not intend to sell methamphetamine.

Our determination of clear error should consider the impact of the omitted instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015). All of these circumstances considered, Widener has not firmly convinced our court that any error in failing to give a nonexclusive possession instruction would have made any difference in the verdict. See *Cooper*, 303 Kan. at 771.

FAILURE TO GIVE A LIMITING JURY INSTRUCTION

For her next issue on appeal, Widener claims the district court erred by failing to give the jury a limiting instruction after admitting prior bad act evidence under K.S.A. 2019 Supp. 60-455 at trial. The State responds by noting that Widener is raising this issue for the first time on appeal. Moreover, the State asserts that no clear error has been shown

10

because the challenged evidence supported the State's charge that Widener possessed methamphetamine for sale, and the jury acquitted her of that offense.

Additional facts are necessary to address this issue. On January 4 and 7, 2019, Detective Lahann witnessed what he believed were two separate drug transactions involving Widener at her residence. On January 4, the detective observed two men walk toward Widener's residence. One of the men entered the residence and left shortly thereafter. On January 7, Detective Lahann observed Widener leave her residence, enter a vehicle for a few minutes, and reenter her residence. The detective testified that based on his training and experience, Widener's activities were consistent with the distribution of controlled substances.

Prior to trial, Widener filed a motion in limine that sought, among other requests, to prohibit the State from referring to any "bad act or propensity to commit any prior bad acts(s) concerning Ms. Widener." For its part, the State filed a motion to admit K.S.A. 2019 Supp. 60-455 evidence regarding Wideners' prior conviction for sale of methamphetamine. Additionally, the State sought to

> "introduce evidence of the observations of members of the Reno County Drug
> Enforcement Unit during periods of surveillance leading up to the application for the
> search warrant in this case. These observations establish, based on the training and
> experience of the officers, a pattern of conduct consistent with the distribution of
> controlled substances."

In arguing the motion, Widener challenged the proposed surveillance testimony as improper K.S.A. 2019 Supp. 60-455 evidence. The prosecutor, however, changed course, and argued: "What officers observed has nothing to do with propensity evidence. It's simply related to this case and this crime. It's not propensity evidence. It's activity of the defendant related to this crime that would support the State's argument that this was, that methamphetamine was possessed with intent to sell."

11

The district court granted the motion in limine regarding Widener's prior conviction but ruled that Detective Lahann's observations prior to obtaining the search warrant were, as the State argued at trial, "clearly part of the investigation. That clearly would be relevant [regardless] of any 60-455 evidence." The court stated, "I agree with the State and we're not talking about 60-455 evidence."

Our standards of review for evaluating whether a district court erred in failing to give a limiting jury instruction on K.S.A. 2019 Supp. 60-455 evidence that was not requested by the defendant at trial is the same as stated in the prior section relating to the failure to give a nonexclusive possession instruction. Additionally, a district court that admits K.S.A. 2019 Supp. 60-455(b) evidence must give a limiting instruction informing the jury of the specific purpose for admission of the evidence to avoid error. *State v. Breeden*, 297 Kan. 567, 579, 304 P.3d 660 (2013). Kansas courts assume, under *State v. Gunby*, 282 Kan. 39, 57-58, 144 P.3d 647 (2006), that omitting a limiting instruction after admission of K.S.A. 2019 Supp. 60-455(b) evidence is error.

At the outset, we must consider whether the surveillance evidence which the State initially characterized as prior crimes or bad acts evidence admissible under K.S.A. 2019 Supp. 60-455 was, in fact, that type of evidence. As just noted, the State changed its approach at trial to assert that the evidence was part and parcel of the crimes charged against Widener. On appeal, the State reverts to its initial argument and states that despite the surveillance evidence constituting evidence of prior crimes of drug sales, there was no reversible error in the district court failing to give a limiting instruction. This is because the surveillance evidence was offered to prove Widener's intent to sell methamphetamine and, by their verdict, the jurors rejected that prosecution theory.

"'K.S.A. 60-455 does not apply if the evidence relates to crimes or civil wrongs committed as a part of the events surrounding the crimes for which [the defendant] was on trial—that is, the res gestae of the crime.'" *State v. Butler*, 307 Kan. 831, 861, 416 P.3d

12

116 (2018) (quoting *State v. King*, 297 Kan. 955, 964, 305 P.3d 641 [2013]). Res gestae refers to acts occurring "'before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence.'" *State v. McDaniel*, 306 Kan. 595, 616, 395 P.3d 429 (2017).

We are persuaded that the surveillance evidence of events that occurred within four days of the execution of the search warrant, and which provided, in part, the predicate for the search warrant executed at Widener's residence, was relevant to prove whether Widener was guilty of possession with intent to sell methamphetamine. See K.S.A. 60-407(f) (Generally, all relevant evidence is admissible.); see also K.S.A. 60-401(b) (Defining relevant evidence as evidence having any "'tendency in reason to prove any material fact.'") *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). Additionally, the surveillance evidence was so intertwined factually and temporally with the charge of possession with intent to sell that it is not a prior crime improperly admitted to show Widener's propensity to commit crimes.

Our Supreme Court has determined that a limiting instruction is not required when the evidence of prior bad acts or crimes is not subject to K.S.A. 60-455(b). *State v. Gonzalez*, 307 Kan. 575, 597, 412 P.3d 968 (2018) (holding evidence was admitted independent of K.S.A. 60-455 and so no limiting instruction required). As a result, we find no error in the district court's failure to provide a limiting instruction regarding the surveillance evidence.

However, we will consider whether—even assuming the surveillance evidence was prior crimes evidence under K.S.A. 60-455—the district court committed reversible error in not providing the jury with a limiting instruction. Under the circumstances of this case, we conduct a clear error analysis to determine whether reversal is necessary. *Gunby*, 282 Kan. at 58 ("[A] trial judge should give such a K.S.A. 60-455 limiting instruction,

but the failure to do so, though error, will no longer demand automatic reversal. Where the complaining party neither requested the instruction nor objected to its omission, the failure to give the instruction will be reversible only if clearly erroneous."). "This requires the appellate court to make a de novo determination of whether the court is firmly convinced that the jury would have reached a different verdict had a limiting instruction been given." *Breeden*, 297 Kan. 567, Syl. ¶ 5.

The State argues that, because the jury did not accept the State's theory about Widener's intent to sell methamphetamine, any error in failing to give a limiting instruction would not have made a difference in the jury verdict and thus was not clear error. We think the State's argument has merit. A limiting instruction for K.S.A. 60-455 evidence ""eliminate[s] the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime.""" *Butler*, 307 Kan. at 860. The jury's acquittal of Widener for possessing methamphetamine with intent to sell clearly shows that the State's admission of surveillance evidence was insufficient to prove her guilt or propensity to commit the crime of possession with intent to sell.

Widener has not firmly convinced our court that the jury would have reached a different verdict had the district court given a limiting instruction. See *Gunby*, 282 Kan. at 58-59 (holding that the district court's failure to give the instruction will not require automatic reversal but that the complaining party must prove that the error was clear error). Even assuming the evidence was admitted under K.S.A. 2019 Supp. 60-455, we find no clear error.

CUMULATIVE ERROR

Finally, Widener argues that cumulative trial errors deprived her of a fair trial. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was

substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). In assessing the cumulative effect of errors during the trial, our court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. 310 Kan. at 345-46.

When an appellate court finds no errors exist, the cumulative error doctrine does not apply. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). Moreover, a single error cannot support reversal under the cumulative error doctrine. *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019).

As discussed earlier—assuming without deciding that there were two instructional errors in this case—neither one individually nor cumulatively would have adversely affected the guilty verdicts in this case. See *State v. Martinez*, 290 Kan. 992, 1017, 236 P.3d 481 (2010) (two trial errors were harmless, unrelated, and were not, in combination, so prejudicial as to deny the defendant a fair trial). We find no cumulative errors, and no substantial prejudice that denied Widener a fair trial.

Affirmed.